## Louisville and Nashville Railroad Company *vs.* Thompson.

Case 37.

### APPEAL FROM NELSON CIRCUIT.

ORD. PET.

18m 735
91 492

1. The defendant, who was sued for his subscription toward making the Louisville and Nashville Railroad, alleged that it was agreed by the agent of the company, when defendant subscribed, that any damage that might accrue to the defendant should be set off against and extinguish so much of his subscription; that the road was located through his land, greatly to his damage, &c.; on demurrer to the plea—Held, that the claim for damages was a valid counter-claim under the 126th *section of the Civil Code.*
2. The act of the Legislature, (*sess. acts of* 1850-1, *section* 4, *p.* 443,) authorizing assessments of damages to the owners of land through which the Louisville and Nashville Railroad might pass, required these assessments to be filed in the county court, and until so filed they were only private papers, and not binding on the party for whose benefit they were made, and not pleadable in bar of such party in a claim for damages.
3. The report of such assessment is not evidence against a party claiming damages for right of way through his land.

4. When an individual consents that a railroad may pass through his land, it is not a tresspass for the company to enter; and any instruction to that effect is erroneous.

5. It is the duty of the court to inform the jury, when it is required to estimate the damages which an owner of land will sustain by the passage of a railroad through it, upon what criterion the damages are to be estimated, as laid down by this court in the case of *Hen derson & Nashville Railroad Company vs. Dickerson,* 17 *B. Mon.* 180.

[The facts of the case appear in the opinion of the court. Rep.]

*John E. Newman,* for appellants—

Upon this record the counsel for appellants submits the following consideration, showing error to the prejudice of plaintiff:

The matters set up in the counter-claim do not show a cause of action against plaintiff, and a valid counter-claim against plaintiff, and the court erred in not sustaining the demurrer. (See *Code of Practice, sec.* 126.)

The defendant's counter-claim did not arise out of his subscription to the railroad company of $600, which is that for which the company brings this suit. The case of *Tinsley vs. Tinsley,* 15 *B. Monroe,* 454, does not sustain this counter-claim; in that case there was a connection between the demands and the counter-claim—the value of the rent of the land withheld—secured by injunction bond; in this case there is no sort of connection between plaintiff's claim for the $600, and a trespass on the defendant's land. The Civil Code only intends to revive that old defense called *recoupment* of damages, which our courts, under the former practice, had disallowed. (See *Sedgwick on Damages,* 475–86.) The counter-claim must be a claim which ordinarily, naturally, or necessarily arises out of the contract sued on. It must not be a merely incidental or fortuitous connection.

The grounds of the counter-claim set up is alleged to exist in parol, which cannot be set up and relied upon to change the legal effect and purport of the

written subscription. (*Wight vs. Shelby Railroad Company*, 16 *B. Monroe*, 6; *Martin vs. Lewis*, 4 *Marshall*, 103.)

The defendant does not seek an assessment of damages according to the agreement which he himself sets up, but expressly claims damages for an alleged trespass for locating and commencing the road upon a different route, to his great injury, &c.

The circuit court erred in sustaining the general demurrer to a part only of the reply, and in refusing to allow the filing of paragraphs Nos. 4 and 5. If the paragraph No. 2, or that which appears as second, was good, the court erred in sustaining the demurrer. If not good then the court should have allowed Nos. 4 and 5 to remain in the record, not only because of the defense they presented, but to enable the parties to understand the questions at issue.

Paragraph No. 5 presents the fact of another suit pending for the same claim set up in the counter-claim between the same parties; other facts relied on to show that others were united in that suit was not the subject of inquiry on the demurrer, but of reply. (See *Civil Code, sec.* 123.) The attention of the court is called to the fact that the defendant is prosecuting three separate suits in the same court, between the same parties, and for the same subject matter—i. e. the action of trespass brought in February, 1856; the inquest or report of the commissioners commenced September, 1855; and the counter-claim in this suit, filed 3d March, 1856.

The question presented by paragraph No. 4 is in substance the same as in No. 5.

The circuit court refused to permit the order appointing the commissioners, or their report, to be read in evidence to the jury. This was proper evidence to show that the damages had been assessed, in pursuance of law, at $150, which had in effect been paid on the subscription, and for which a credit was offered; and whilst the assessment was not traversed it was conclusive in any collateral pro-

Louisv.& Nash.
R. R. Co.
vs.
Thompson.

ceeding, and there was no traverse of the assessment until after the trial of this case. The record was clearly evidence under the issue joined. If, as is possible, the issue was made upon the allegations of the counter-claim and the reply No. 3, the ·counter-claim alleges an agreement to set off the damages against the subscription, and the record was evidence in connection with other testimony, from which the jury had a right to infer that the damages had been agreed on and assessed in the manner contemplated by the parties. At the time ·of making the subscription the law was in force prescribing the mode in which damages in such cases should be assessed, and the inference of law is that the parties had in contemplation the legal mode of assessment. No tender of the amount of damages assessed was necessary, as the parties had agreed that it was to be a credit *pro tanto* on the subscription.

The court, in the admission of testimony, allowed Thompson to rely upon the agreement when he chose to do so, and to repudiate it and rely upon an alleged trespass when it suited his purposes. This was error.

The first instruction on behalf of the defendant was erroneous, because it disregards the agreement set forth and relied on by the defendant in his answer, and because it refers to the jury to determine whether the plaintiff had complied with the law.

The second instruction is erroneous, because in it the jury are told that Thompson is not to be prejudiced by a fact which was not allowed by the court to come before the jury.

The third is still more objectionable. In that instruction the court assumes that Thompson had sustained damages, but that those damages should not only satisfy plaintiff's demand but more, and gives them free scope, and directs them to assess such damages as they think proper from the evidence in the case. This is giving to the jury full discretion

over the law and facts of the case, without pointing out any criterion by which the jury was to govern itself in the assessment.

The verdict of the jury is decidedly against the weight of the evidence.

The verdict of the jury was that the damage to Thompson was $600. The subscription and interest was $673 50, yet the jury undertake to say that these sums are equal, and find for defendant, and the court give judgment upon this verdict.

*Chas. A. Wickliffe*, for appellee—

The main question, and that on which the whole defense rests, so far as the law of the case is involved, is the validity of the counter-claim set up by Thompson. If he had a right to plead it the proof sustains it beyond doubt.

It may be said that it is an attempt to evade the terms of Thompson's contract, or to change the legal effect thereof by parol proof. This is not a valid objection to the parol proof relied on. Thompson does not deny the obligation arising out of the subscription; he admits its obligatory force; he sets up no parol agreement by which to change it in any way. Though he states facts which induced him to make the subscription, he does not deny its obligatory force; but they are stated to show that the defense which he relies upon grew out of the same transaction connecting itself with the matter in suit; and in fact arising upon contract; that whatever damages the defendant might sustain by the location of the road upon his lands should be applied to the payment of the $600 subscribed by defendant. He avers the injury to him by the location of the road to exceed $1,000. The answer setting up the counter-claim of Thompson was held to be good on demurrer.

The plaintiff's reply to the counter-claim sets out two distinct defences thereto: 1. The pendency of another suit for the same damages set up in the

counter-claim between the same parties. 2. That commissioners had already assessed the defendant's damages arising from the location of the road at $150, which the plaintiffs offer to credit on the subscription, and refer to the report of commissioners appointed to assess damages of record, &c. As to the validity of this counter-claim, the court is referred to the case of *Tinsley vs. Tinsley*, 15 *B. Monroe*, 454, in which case this court has given a construction to the 126*th section of the Civil Code* in respect to the defense of counter-claim.

The rejection of the amendments offered by plaintiff by way of reply, was proper; they presented no valid objection to the counter-claim. The assessment referred to had never been filed in court until after the plea of counter-claim had been put in by Thompson. He traversed the assessment reported by the commissioners so soon as he knew it was filed.

The record of the suit alleged to be pending against the road company was produced; it showed no service on the company, and was against other persons for a different offense.

There is in the record in this case a confusion in the instructions asked and given for defendant. There was three asked and given, with modifications; they are referred to as 1, 2, and 3, in the plaintiff's second bill of exceptions. No. 1. " That the ' plaintiff had no right to enter upon the land and ' farm of the defendant, and appropriate his land, ' and commence the construction of the road by ' the use of his soil, and digging rock from the ' same, until they had complied with the law pro- ' viding the mode and manner of obtaining the right ' of way, and the title to the land acquired, and only ' then upon making just compensation." The court gave this instruction with this qualification, " unless ' the defendant gave them permission, or assented to ' such entry and building the road." 2. " The de- ' fendant, Thompson, is not affected or prejudiced in

' his claim for such damages as he has sustained by the ' building of the road upon his land, &c., by the act of ' the commissioners, Duncan and Broadhead." 3. " If ' they believe, from the evidence, that Thompson has ' sustained damages, they have .the right, after sat-' isfying the debt, to find for him. such balance as ' they may think right from the evidence in the ' cause." There is nothing in these instructions of which the plaintiff can complain.

An affirmance is confidently expected.

Judge STITES delivered the opinion of the court.           Jan. 23, 1858.

On the 12th February, 1856, appellant brought this action against appellee to recover $600, with the accumulated interest thereon, it being the amount of capital stock subscribed by the latter as a stockholder of the corporation.

The appellee admitted the subscription, and his liability thereon, but relied, in defense, that the agents of the company who had obtained the subscription had agreed that he should be allowed, in discharge thereof, any damage he might sustain by reason of running the railroad through his land, and should be paid any surplus for such damage over and above the amount of his stock._ He alleges this in his answer by way of counter-claim, and states that the road had been constructed through his farm, cutting off his out houses from his dwelling, destroying his spring, and otherwise greatly injuring him, for which injury he claims, under the alleged agreement, $1,000.

A demurrer was filed to this counter-claim and overruled, and thereupon the appellant replied, 1st. The pendency of another action for the same cause, and between the same parties in the same court, which was referred to and exhibited; and 2d. That the circuit court of Nelson county had, in pursuance of the charter of the company, appointed commissioners to assess damages on the route of the road, and that said commissioners had, in conformity with

law, assessed appellee's damages at $150, and reported the same; which assessment they claimed to be conclusive, and which amount they then offered to credit on the subscription.

To this reply appellee demurred, and his demurrer was sustained as to the second paragraph, and overruled as to the first.

Afterwards, at another term, appellants offered an amended replication presenting substantially the same matters in avoidance of the counter-claim, but more minutely and at large, which was rejected by the court. Exceptions were taken by both parties during the progress of the cause to the various rulings of the court.

Upon the trial the jury returned the following verdict: "We of the jury find that the defendant has ' sustained damages, by the location of the railroad, ' to the sum of $600, which offsets against the $600 ' and interest sued for by plaintiff, and we therefore ' find for defendant;" which was approved by the court and judgment rendered for the defendant.

A motion for a new trial having been overruled, the railroad company have appealed, and complain:

1st. That their demurrer to the counter-claim was improperly overruled.

2d. That appellee's demurrer to the 2nd paragraph of the reply was sustained, and the amended replication rejected.

3d. That improper evidence was admitted against the company, and competent evidence offered in its behalf excluded.

4th. That the court below erred in its instructions to the jury; and

5th. That the damage was excessive, and the judgment unauthorized by the verdict.

The grounds relied on for reversal will be briefly considered in the order presented.

*1. The def't, who was sued*  1. The answer presented a valid counter-claim. It shows upon its face a cause of action in favor of

the defendant against the plaintiff, connected by the alleged agreement with the transaction set forth in the petition, and comes within the spirit and letter of the Civil Code, (sec. 126.)

2. The report of the commissioners assessing the damages of appellee at $150, and relied on in the 2nd paragraph of the reply, was not filed in the Nelson circuit court until after this suit was begun, and the answer and counter-claim filed. It was to all intents and purposes a private paper, under the control of the commissioners or company until filed in the proper court, as required by the 4th section of the act authorizing such assessment. (Sess Acts, '50, '51, 443.) Certainly an ex parte proceeding like it is entitled to no consideration against any one, either as evidence or in bar of an action, until it has been filed in conformity with the requisitions of the law allowing it, and an opportunity given the owner of the property injured to controvert the assessment. The 2d paragraph of the reply, which set up this report, was clearly bad on demurrer, and the court properly rejected the amendment relating to it. The 1st paragraph of the reply presented substantially, though somewhat informally, the pendency of another action for the same cause set forth in the counter-claim, and there was no necessity for further amendment to it. There was therefore no error in rejecting either of the proposed amendments.

3. We are unable to perceive that any improper evidence was admitted that could have prejudiced appellant. In inquiries relating to the assessment of damages in such cases considerable latitude is allowed. This results from the very nature of the inquiry itself. More danger is to be apprehended from unnecessary restrictions than a reasonable degree of latitude. The criterion of damages are to be prescribed by the court, and, when correctly laid down, always direct the minds of the jury to the material facts that are to govern in the assessment. The report of the commissioners was properly rejected as

LOUISV. & NASH. R. R. Co.
*vs.*
THOMPSON.

for his subscription toward making the Louisville & Nashv'e R. R., alleged that it was agreed by the agt of the comp'y, when defendant subscribed, that any damage that might accrue to the def't should be set off against and extinguish so much of his subscript'n; that the road was located through his land, greatly his damage, &c.; on demurrer to the plea—Held, that the claim for damages was a valid counter-claim under the 128th sec. of the Civil Code.

2. The act of the Legislature, (*session acts of* 1850-1, *sec.* 4, *p.* 443,) authorizing assessments of damages to the owners of land thro' which the Louisville & Nashville R. R. might pass, required these assessments to be filed in the circ't court, & until so filed they were only private papers, & not binding on the party for whose benefit they were made, and not pleadable in bar of such party for a claim for damages.

3. The report of such assessment is not evidence against a

Louisv.& Nash.
R. R. Co.
*vs.*
Thompson.

party claiming
damages for
right of way
through his land
4. When an
individual con-
sents that a rail
road may pass
thro' his land,
it is not a tres-
pass for the
company to en-
ter; and any in-
structions to
that effect is
erroneous.

substantive evidence, for the reasons already stated in answer to second ground, but was admissable for the purpose for which it was used.

4. We think this objection well taken. The first instruction was obviously abstract and misleading.

The counter-claim itself relies on an agreement to set off any damages that might be sustained by the location of the road through the appellee's farm, and thus impliedly admits that he had consented to such location. The claim is for damages under an agreement, and not for damages resulting from a trespass. It arises *ex contractu* and not *ex delicto*, and the question as to the right of the company to enter upon the land was not at all involved in the issue. The instruction correctly says that the company had no right thus to enter until it had complied with the law, unless permitted by defendant, but as the right of entry was not involved it was abstract and well calculated to prejudice appellant. Besides, the instruction, if applicable to the issue, is objectionable because it submits to the jury to determine what the law demanded as a prerequisite to the entry of the company. This was manifest error.

The 3d instruction is likewise objectionable for two reasons: 1st. It rather assumes that the damage sustained by appellee was equal to the amount of his subscription, and authorizes the finding against appellant for damage beyond; and 2d. Because it failed to furnish any guide to the jury by which a correct assessment could have been attained. The court should have told the jury in what manner the value of the land taken by the company for the purposes of the road should be estimated, and how the consequential damages should be fixed. The jury ought to have been informed that the value of the land to the *appellee*, considering its relative position to his other land, and other circumstances tending to diminish or enhance such value, was the criterion of the damage so far as the land taken was concerned, and that to the extent of the value of the land

5. It is the duty
of the court to
inform the jury,
when it is re-
quired to esti-
mate the dam-
ages which an
owner of land
will sustain by
the passage of a
railroad through
it, upon what
criterion the
damages are to
be estimated, as
laid down by
this court in the
case of *Hend'n
& Nashv'e R. R.
Co. vs. Dicker-
son*, 17 B. Mon.
180.

thus ascertained he was entitled, without regard to any benefits resulting from the road. But that in estimating damages beyond this value of the land they had the right to consider, and should consider, the benefits, if any, that he derived from the construction of the road, as provided by the charter. The same question as to the proper assessment of damages in such cases arose in the case of the *Henderson and Nashville Railroad Company vs. Dickerson*, 17 *B. Monroe*, 180; and the principles there laid down are applicable to this case.

5. Without determining whether the assessment of the jury was correct or incorrect under the instructions given, it seems to us that in any aspect, the judgment was unauthorized by the verdict. The amount claimed in the petitition, and not denied, was $673 50, and the damage allowed upon the counter-claim was only $600. Upon what principle the one was regarded as a complete set-off to the other we are unable to perceive.

For the reasons indicated the judgment is deemed erroneous, and *reversed*, and cause remanded for a new trial and other proceedings not inconsistent with this opinion.

